ROBBINS GELLER RUDMAN & DOWD LLP
AELISH MARIE BAIG
TAEVA SHEFLER
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
aelishb@rgrdlaw.com
tshefler@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
STUART A. DAVIDSON
BRADLEY M. BEALL
ALEXANDER H. COHEN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
bbeall@rgrdlaw.com
acohen@rgrdlaw.com

Attorneys for Plaintiffs and the Class

[Additional counsel listed in signature block.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| VASHONDRA HARRIS, DAMANY BROWNE, TIFFANY WEBER, HEATHER C. MACLEAN, and SONIA FOWLER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BEFORE BRANDS, INC. d/b/a SPOONFULONE,<br><br>Defendant. | Case No.<br><br><u>CLASS ACTION</u><br><br>COMPLAINT FOR:<br>(1) Breach of Implied Warranty, 15 U.S.C. §2301, *et seq.*;<br>(2) Unjust Enrichment;<br>(3) Breach of Express/Implied Warranty of Merchantability;<br>(4) Fraudulent Concealment;<br>(5) Violations of the California Consumer Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*;<br>(6) Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.*;<br>(7) Violations of the False Advertising Law, Cal. Bus. & Prof. Code §17500, *et seq.*;<br>(8) Violations of New York General Business Law §349;<br>(9) Breach of Implied Warranty of Merchantability, N.Y. U.C.C. §2-314; |

(10) Violations of the Texas Deceptive Trade Practices – Consumer Protection Act, Tex. Bus. & Com. Code §17.46;

(11) Breach of Implied Warranty of Merchantability, Tex. Bus. & Com. Code §2.314;

(12) Violations of the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. §325F.68, *et seq.* and Minn. Stat. §8.31, *et seq.*;

(13) Violations of the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. §325F.67, *et seq.*;

(14) Violations of the Minnesota Deceptive Trade Practices Act, Minn. Stat. §32D.43, *et seq.*; and

(15) Violations of the Alabama Deceptive Trade Practices Act, Ala. Code §8-19-1, *et seq.*

JURY TRIAL DEMAND

Plaintiffs VaShondra Harris, Damany Browne, Tiffany Weber, Heather C. MacLean, and Sonia Fowler (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through the undersigned attorneys, bring this Class Action Complaint against defendant BEFORE Brands, Inc. d/b/a SpoonfulONE ("SpoonfulONE" or "Defendant") based on personal knowledge as to themselves and upon information and belief as to all other matters based on the investigation of counsel.

## NATURE OF THE ACTION

1. Food allergies are a growing epidemic. Indeed, the Centers for Disease Control & Prevention reports that between 1997-1999 and 2009-2011, food allergy prevalence among children increased by 50%.[1] In the United States, the prevalence of childhood peanut or tree nut allergy appears to have more than tripled between 1997 and 2008.[2]

2. However, recent studies have shown that consistent introduction of common food allergens, such as peanuts, milk, and eggs, into infants' diets beginning at 4-6 months is effective in drastically lowering the risk of later development of associated food allergies.

3. SpoonfulONE develops, manufactures, advertises, and sells a line of early allergen introduction food products, whose sole stated purpose is to promote oral tolerance of common food allergens in infants by purportedly introducing allergenic proteins into their diets beginning at 4-6 months of age. On all of its product labels, SpoonfulONE represents that they are designed to "introduce food allergens."

4. In support of its claim that its products "introduce food allergens" to infants, SpoonfulONE heavily markets its products as "science-based" and claims that each serving of its

---

[1] Kristen D. Jackson et al., *Trends in Allergic Conditions Among Children: United States, 1997-2011*, NCHS Data Brief No. 121 (May 2013), https://www.cdc.gov/nchs/products/databriefs/db121.htm#citation.

[2] Scott H. Sicherer, et al., *US prevalence of self-reported peanut, tree nut, and sesame allergy: 11-year follow-up*, 125 J. ALLERGY & CLINICAL IMMUNOLOGY PRAC. 1322 (2010), https://www.jacionline.org/action/showPdf?pii=S0091-6749%2810%2900575-0.

1  products contains precisely 30mg of almond, cashew, cod, egg, hazelnut, milk, oat, peanut, pecan,

2  pistachio, salmon, sesame, shrimp, soy, walnut, and wheat protein.[3]

3      5.  SpoonfulONE further represents that "[e]ach serving of SpoonfulOne includes the

4  9 food groups associated with over 90% of food allergies to help babies' immune systems **build**

5  **tolerance** over time."[4]

6      6.  SpoonfulONE also represents to consumers that it tests its products up to three

7  times to ensure protein integrity and claims that its "rigorous approach to testing sets the standard

8  of protein validation and safety for infants."[5]

9      7.  SpoonfulONE's representations are not only false, deceptive, and misleading, but

10  extraordinarily dangerous, giving parents a false sense of security that their children are obtaining

11  enough allergenic proteins to promote oral tolerance to food allergens.

12      8.  In particular, SpoonfulONE's marketing and advertising for its Puffs, Crunchy

13  Puffs, and Oat Crackers (collectively, "SpoonfulONE Products" or "Products") is false, deceptive,

14  and misleading to reasonable consumers because the SpoonfulONE Products do not contain the

15  30mg of allergenic peanut, milk, and egg protein as advertised, and **even if they did**, according to

16  peer-reviewed studies, **30mg is an insufficient amount to introduce or promote oral tolerance of**

17  **food allergens**, as represented by SpoonfulONE.  Additionally, SpoonfulONE's representations

18  as to its thorough protein integrity testing of its Products is false, deceptive, and misleading to

19  reasonable consumers because the testing method used by SpoonfulONE is incapable of assessing

20  the effectiveness of its Products in introducing or promoting oral tolerance of food allergens.

21      9.  SpoonfulONE's fraudulent marketing and sale of the SpoonfulONE Products to

22  consumers evokes the colorful imagery of the "snake oil salesman," peddling tonics and elixirs

23

24

---

25  [3]  *How It Works*, SPOONFULONE,  https://www.spoonfulone.com/pages/how-it-works   (last visited Sept. 28, 2022).

26  [4]  *Frequently Asked Questions*, SPOONFULONE, https://www.spoonfulone.com/pages/frequently
27  -asked-questions (last visited Sept. 28, 2022) (emphasis added).

28  [5]  *How It Works*, *supra* n.3.

that promise the moon, but in reality, offer no tangible benefit to those who purchase them.[6]  As a result of SpoonfulONE's false, deceptive, and misleading marketing and advertising of its Products, consumers, including Plaintiffs, have been damaged by unknowingly purchasing worthless products.  Even worse, they may have missed the short window to prevent their child from developing a lifelong food allergy.

10.    Plaintiffs would not have purchased the SpoonfulONE Products had they known that they were incapable of introducing or promoting oral tolerance to common food allergens, as represented by SpoonfulONE.

11.    Plaintiffs bring this action on behalf of themselves and other similarly situated consumers who purchased SpoonfulONE Products to halt Defendant's dissemination of its false, misleading, and deceptive advertising, correct the misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased worthless SpoonfulONE Products.

## INTRADISTRICT ASSIGNMENT

12.    A substantial part of the events or conduct that give rise to the claims in this action occurred in San Mateo County, and as such this action is properly assigned to the San Francisco Division of this Court pursuant to Civil L.R. 3-2(d).  *See* Declaration of Heather C. MacLean Pursuant to Cal. Civ. Code §1780(d) attached hereto as Exhibit A, demonstrating that this action has been brought in the proper forum.

## PARTIES

13.    Plaintiff VaShondra Harris ("Harris") is a natural person and a resident and citizen of Minnesota and is one of the millions of people who purchased one of Defendant's falsely advertised SpoonfulONE Products.

---

[6]  *See* Lakshmi Gandhi, *A History Of 'Snake Oil Salesmen'*, NPR (Aug. 26, 2013, 11:55 AM ET), https://www.npr.org/sections/codeswitch/2013/08/26/215761377/a-history-of-snake-oil-salesmen (discussing the origins of the phrase and tracing its rise to the latter half of the 19th century).

14.     Plaintiff Damany Browne ("Browne") is a natural person and a resident and citizen of New York and is one of the millions of people who purchased one of Defendant's falsely advertised SpoonfulONE Products.

15.     Plaintiff Tiffany Weber ("Weber") is a natural person and a resident and citizen of Texas and is one of the millions of people who purchased one of Defendant's falsely advertised SpoonfulONE Products.

16.     Plaintiff Heather C. MacLean ("MacLean") is a natural person and a resident and citizen of California and is one of the millions of people who purchased one of Defendant's falsely advertised SpoonfulONE Products.

17.     Plaintiff Sonia Fowler ("Fowler") is a natural person and a resident and citizen of Alabama and is one of the millions of people who purchased one of Defendant's falsely advertised SpoonfulONE Products.

18.     Defendant BEFORE Brands, Inc. does business as SpoonfulONE, and is a Delaware corporation headquartered in Menlo Park, California.   Defendant SpoonfulONE conducts business throughout the State of California and the United States.   Defendant SpoonfulONE created, strategized about, and published its False Product Claims from its headquarters in California.

## JURISDICTION AND VENUE

19.     Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), because (i) the proposed Class (defined herein) consists of well over 100 members; (ii) the parties are minimally diverse, as members of the proposed Class are citizens of a state different from Defendant's home state; and (iii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs.

20.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction.  This Court has personal jurisdiction over SpoonfulONE because it maintains its principal headquarters in California, regularly conducts business in California, and has sufficient minimum contacts in California.  In addition, Plaintiffs' claims arise out of Defendant's

1    conducting and transacting business in California, and many of the actions giving rise to this

2    Complaint took place in this District.

3        21.    Venue is proper in this District pursuant to 28 U.S.C. §1391 because SpoonfulONE

4    is a resident of this District and is subject to this Court's personal jurisdiction.  SpoonfulONE is

5    registered to conduct business throughout California, regularly conducts business in this District,

6    and maintains an office in this District.  In addition, the causes of action arose, in substantial part,

7    in this District.

8                            **FACTUAL ALLEGATIONS**

9                **Origin of Early Allergen Introduction Food Products**

10       22.    From 2015-2016, three landmark clinical studies assessing the impact of early

11   introduction of allergenic proteins into infant diets would fundamentally change allergists' views

12   on introducing allergens to infants, inspire important new clinical guidelines recommending early

13   allergen introduction, and ultimately lead to the creation of companies, including SpoonfulONE,

14   that purport to specialize in the production of early allergenic introduction food products that are

15   marketed as a safe, effective, and convenient way to substantially reduce the risk that infants will

16   develop common food allergies.

17       23.    On February 26, 2015, a group of researchers published the LEAP study, which

18   found that the introduction of six *grams* of allergenic peanut protein per week into an infant's diet

19   prior to 11 months of age reduced the prevalence of peanut allergies by approximately 70-80%.[7]

20       24.    On May 5, 2016, a group of researchers published the EAT study, which found that

21   early introduction of four *grams* (each) of allergenic peanut, egg, milk, sesame, fish, and wheat

22   protein per week reduced the risk of developing corresponding allergies at 36 months of age for

23   peanuts by 67%.[8]

24   _____

25   [7]  George Du Toit et al., *Randomized Trial of Peanut Consumption in Infants at Risk for Peanut
     Allergy*, 372 NEW ENG. J. MED. 803 (Feb. 26, 2015), https://www.nejm.org/doi/pdf/10.1056/
26   NEJMoa1414850?articleTools=true.

27   [8]  Michael R. Perkin et al., *Randomized Trial of Introduction of Allergenic Foods in Breast-Fed
     Infants*, 374 NEW ENG. J. MED. 1733, 1738 (Mar. 4, 2016), https://www.nejm.org/doi/pdf/10.1056/
28   NEJMoa1514210?articleTools=true.

25.     On December 8, 2016, a group of researchers published the PETIT study, which found that early, consistent, and gradual consumption of allergenic egg protein (in the order of 875mg total per week) resulted in a 79% reduction in egg allergies in high-risk infants.[9]

26.     Together, the landmark LEAP, EAT, and PETIT clinical studies inspired the development of important new clinical allergy guidelines for infants, encouraging the early and consistent introduction of allergenic protein into infants' diets, beginning as early as 4-6 months of age, in order to reduce the risk of subsequent development of common food allergies.[10]

27.     These three studies also resulted in a number of companies, including SpoonfulONE, bringing early allergen introduction food products to market.  Early allergen introduction food products typically include mix-in powders, crackers, and puffs, and are marketed as a safe, effective, and convenient method to **promote tolerance** in infants in order prevent the later development of allergies to foods such as peanuts, milk, and eggs, among others.

### Defendant's Representations of the Composition, Efficacy, and Testing of Its SpoonfulONE Products

28.     Founded in 2015, SpoonfulONE markets and sells four early allergen introduction food products under the SpoonfulONE brand name, including Mix-Ins (flavorless), Puffs (available in strawberry, banana, blueberry sweet potato, pumpkin, and tomato carrot flavors), Crunchy Puffs (available in broccoli cheesy, homestyle ranch, and garden veggie flavors), and Oat

---

[9]    Osamu Natsume et al., *Two-step egg introduction for prevention of egg allergy in high-risk infants with eczema (PETIT): a randomized, double-blind, placebo-controlled trial*, 389 LANCET 276 (Jan. 21, 2017), https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(16)31418-0/fulltext.

[10]    *See, e.g.*, U.S. DEP'T OF AGRIC. & U.S. DEP'T OF HEALTH & HUM. SERVS., DIETARY GUIDELINES FOR AMERICANS 2020-2025 58 (9th ed. 2020), https://www.dietaryguidelines.gov/ sites/default/files/2020-12/Dietary_Guidelines_for_Americans_2020-2025.pdf    (recommending the introduction of potentially allergenic foods such as peanuts, milk, tree nuts, wheat, shellfish, fish, and soy at six months of age, as well as recommending the introduction of peanuts as early as 4-6 months for infants at higher risk for developing a peanut allergy); David M. Fleischer et al., *A Consensus Approach to the Primary Prevention of Food Allergy Through Nutrition*, 9 J. ALLERGY & CLINICAL IMMUNOLOGY 22, 23 (Jan. 2021), https://www.aaaai.org/Aaaai/media/ Media-Library-PDFs/Allergist%20Resources/Statements%20and%20Practice%20Parameters/A-Consensus-Approach-to-the-Primary-Prevention-of-Food-Allergy-Through-Nutrition-Jan-21-(1).pdf ("To prevent peanut and/or egg allergy, both peanut and egg should be introduced around 6 months of life, but not before 4 months.").

1  Crackers (available in blueberry, vanilla, and cocoa chip flavors).  The SpoonfulONE Products at

2  issue in this litigation are the Puffs, Crunchy Puffs, and Oat Crackers.

3       29.  SpoonfulONE launched its SpoonfulONE Mix-In product in October 2017.[11]

4  Subsequently, it introduced its SpoonfulONE Puff, Crunchy Puff, and Cracker Products.

5       30.  On the SpoonfulONE Products' labels, SpoonfulONE expressly represents that the

6  Products are "**The Most Complete Way to Introduce Food Allergens**," as shown here:

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  ---

[11]  Stephen Daniells, *Before Brands' SpoonfulOne Tackles Food Allergies with Safe Early*
27  *Exposure for Children*, NUTRAINGREDIENTS (Nov. 17, 2017), https://www.nutraingredients-
usa.com/Article/2017/11/27/Before-Brands-SpoonfulOne-tackles-food-allergies-with-safe-early-
28  exposure-for-children.

CLASS ACTION COMPLAINT –                                                    - 7 -



31.     The Products' packaging further states that it "**Includes 16 foods associated with over 90% of food allergens**," as shown here:



32.     The packaging for all of the SpoonfulONE Products at issue in this case are materially the same with respect to SpoonfulONE's representations.

33.    Similarly, on SpoonfulONE's website, SpoonfulONE represents that "SpoonfulONE is a science-based nutrition that works in the tummy to help introduce common food allergens early during the immune system's development."[12]

34.    Consistent with its labeling, SpoonfulONE also represents that "SpoonfulONE is the most complete way to introduce food allergens and each product includes the same spoonful of the 16 foods associated with over 90% of food allergies."[13]  These 16 foods are represented as including almond, cashew, cod, egg, hazelnut, milk, oat, peanut, pecan, pistachio, salmon, sesame, shrimp, soy, walnut, and wheat proteins.

35.    SpoonfulONE also specifically represents that "[w]e precisely portioned the amount of proteins (30mg) in SpoonfulONE so that each serving is large enough to safely increase the production of lgG4 (good, protective antibodies)."[14]  Further, SpoonfulONE represents in the FAQ section of its website that "[e]ach serving of SpoonfulOne includes the 9 food groups associated with over 90% of food allergies to help babies' immune systems **build tolerance** over time."[15]  Simply put, SpoonfulONE represents to consumers that each serving of its SpoonfulONE Products contain **30mg** of almond, cashew, cod, egg, hazelnut, milk, oat, peanut, pecan, pistachio, salmon, sesame, shrimp, soy, walnut, and wheat proteins, and that 30mg of allergenic protein (consumed daily) is a sufficient amount to promote tolerance in infants.

36.    SpoonfulONE also assures consumers that "[o]ur rigorous approach to testing sets the standard of protein validation and safety for infants," and represents that it tests SpoonfulONE Products using sodium dodecyl-sulfate polyacrylamide gel electrophoresis ("SDS-PAGE") testing.[16]  SDS-PAGE is a method for identifying the presence of a protein and often used as a quality control measure for biopharmaceuticals.

---

[12]    *How It Works*, *supra* n.3.

[13]    *Id.*

[14]    *Id.*

[15]    *Frequently Asked Questions*, *supra* n.4 (emphasis added).

[16]    *How It Works*, *supra* n.3.

37.     SpoonfulONE further lulls consumers into believing that SpoonfulONE Products are thoroughly tested to ensure that they contain enough allergenic protein necessary to introduce food allergens or promote oral tolerance by stating:

> SpoonfulOne was developed at an academic institution and transformed into a consumer product.  Before SpoonfulONE ever reaches your baby's belly, every product is tested up to 3 times (each individual ingredient, after blending, and final product) to ensure it meets or exceeds national and international standards for food safety and protein integrity.  We are confident that we are giving you only the best for your baby.[17]

38.     Rather than provide consumers with any reputable data or studies demonstrating that SDS-PAGE is in fact an appropriate method to test whether its Products contain a sufficient amount of intact allergenic protein capable of introducing food allergens or promoting oral tolerance, SpoonfulONE instead provides the following graphic:

 

39.     Clearly, SpoonfulONE published this graphic with the intent to lead consumers into believing that: (a) the base ingredients used in its Products contain intact proteins, while commercial ingredients do not; (b) its processing and blending method keeps proteins intact, while

---

[17]  *Id.*

"alternate processing" methods do not; and (c) its finished Products contain intact proteins, while some unidentified early allergen competitor's products do not.

**Defendant's Representations of the Composition, Efficacy, and Testing
of Its SpoonfulONE Products are False, Misleading, and/or Deceptive**

40.     On March 7, 2021, a peer-reviewed study ("Filep and Chapman study") to determine the concentration and dosages of major food allergens contained in commercial early allergen introduction foods was published.[18]  This study found that SpoonfulONE's Puff Product ***does not contain*** any detectable amount of allergenic peanut protein or 30 mg of the other proteins as SpoonfulONE represents, and its Cracker Product contains ***negligible amounts*** of allergenic peanut, milk, and egg proteins (***less than 1 mg of each***).[19]

41.     Notably, the results of the Filep and Chapman study found that SpoonfulONE's Mix-In products do, in fact, contain amounts of allergenic peanut, milk, and egg proteins that met or exceeded the claimed 30 mg of protein per serving.[20]

42.     Upon information and belief, the reason that SpoonfulONE's Mix-In product contains the claimed amounts of allergenic peanut, milk, and egg proteins, while its Puff and Cracker Products do not, is due to the processes used to manufacture its Puff and Cracker Products.

43.     Proteins have a 3-dimensional structure that is recognized by the immune system, which are responsible for immune recognition, *i.e.*, tolerance and reaction to food proteins.

44.     Processing of food proteins can affect the 3-dimensional structure of the food proteins, which may limit or completely impair immune recognition of the proteins by the immune system.

---

[18]   Stephanie Filep & Martin D. Chapman, *Doses of Specific Allergens in Early Introduction Foods for Prevention of Food Allergy*, 10 J. ALLERGY & CLINICAL IMMUNOLOGY PRAC. 150 (Jan. 1, 2022), https://www.jaci-inpractice.org/article/S2213-2198(21)00294-4/fulltext.

[19]   *Id.*

[20]   *Id.*

45.     For example, when food proteins are subjected to high temperatures and high pressure, the structure of the protein is altered, often leading to the destruction of allergenicity.[21]

46.     Upon information and belief, the manufacturing processes used by SpoonfulONE to manufacture the SpoonfulONE Products (*i.e.*, its Puff, Crunchy Puff, and Cracker Products) subjects the included proteins to high pressure and/or heat, altering the 3-dimensional structure of the proteins such that they are rendered incapable of meaningful immune recognition by the immune system.

47.     In response to the Filep and Chapman study, SpoonfulONE submitted a critique that included specious arguments challenging the study's method limitations and assumptions, rather than offering any explanation as to why its Puff and Cracker Products contain little or no allergenic peanut, milk, and egg proteins.[22]  In its critique, it argued that its implementation of protein testing of SpoonfulONE Products using SDS-PAGE was sufficient and a standard accepted by the United States Food and Drug Administration ("FDA").[23]

48.     Subsequently, Stephanie Filep ("Filep") and Martin D. Chapman ("Chapman") replied to SpoonfulONE's critique, explaining that their study included measurements of four major allergens (Ara h 1, Ara h 2, Ara h 3, and Ara h 6), which according to FDA scientists, account for approximately 90% of peanut protein.[24]

---

[21]  *See, e.g.*, Anna Nowak-Wegrzyn & Alessandro Fiocchi, *Rare, medium, or well done? The effect of heating and food matrix on food protein allergenicity*. 9 CURRENT OPINION ALLERGY & CLINICAL IMMUNOLOGY 234 (June 2009), https://pubmed.ncbi.nlm.nih.gov/19444093/ ("Heating generally decreases protein allergenicity by destroying conformational epitopes. . . . Introduction of extensively heated milk and egg proteins is associated with decreasing sizes of skin prick test wheals and increasing serum food-specific lgG4 levels.").

[22]  Olivia Weihe et al., *Concerns about the approach of measuring allergens in early introduction foods for prevention of food allergy*, 9 J. ALLERGY & CLINICAL IMMUNOLOGY PRAC. 2944 (July 2021), https://www.jaci-inpractice.org/action/showPdf?pii=S2213-2198%2821%2900512-2.

[23]  *Id.* at 2945.

[24]  Stephanie Filep & Martin D. Chapman, *Reply to "Concerns about the approach of measuring allergens in early introduction foods for prevention of food allergy"*, 9 J. ALLERGY & CLINICAL IMMUNOLOGY PRAC. 2945 (July 2021), https://www.jaci-inpractice.org/action/showPdf?pii=S2213-2198%2821%2900513-4.

49.     Filep and Chapman also rejected the methodological concerns raised in SpoonfulONE's critique, asserting that rejections of their methodology "would need to explain why high levels of allergens were found in several [early allergen introduction foods] and not others [*i.e.*, SpoonfulONE's puff and cracker Products]."[25]

50.     Importantly, Filep and Chapman made clear that SpoonfulONE's implementation of protein testing of SpoonfulONE Products using SDS-PAGE was insufficient to assess the Products' ability to promote oral tolerance of food allergents, as SpoonfulONE represents:

> Total protein does not generally correlate with allergenic or biological potency of therapeutic allergen products.  The SDS-PAGE results provided by Weihi et al on SpoonfulONE EIF samples are a measure of protein conformity and integrity that are used by allergen manufacturers.  However, SDS-PAGE alone is insufficient for standardization purposes or for assessment of allergenicity.[26]

51.     Accordingly, the Filep and Chapman study not only demonstrates that SpoonfulONE Products do **not** contain the 30 mg of allergenic peanut, milk, and egg proteins – or an amount sufficient to introducing food allergens or promote oral tolerance – as represented, but it also shows that SDS-PAGE, touted by SpoonfulONE in its marketing materials, is an insufficient method to assess the whether SpoonfulONE Products are even effective in introducing food allergens or promoting oral tolerance in infants.

52.     Thus, SpoonfulONE knew that its representations concerning the composition, efficacy, and testing of its SpoonfulONE Products were false and misleading when made.

53.     Further evidencing SpoonfulONE's knowledge of the falsity of the composition and efficacy representations regarding its SpoonfulONE Products is the fact that such products were voluntarily pulled from the United Kingdom market following backlash from prominent British allergist groups.

54.     On September 26, 2019, Nestle Health Science ("Nestle") acquired a significant minority stake in SpoonfulONE, an acquisition which gave it the exclusive licensing rights to

---

[25] *Id.*

[26] *Id.*

1  SpoonfulONE's products outside of the United States, as well as an option to purchase all

2  remaining equity in SpoonfulONE in the future.[27]

3      55.    Subsequently, Nestle began marketing SpoonfulONE Products directly to

4  consumers in the United Kingdom.

5      56.    Shortly after Nestle's launch of SpoonfulONE Products in the United Kingdom,

6  several leading British allergist groups – including the British Society for Allergy & Clinical

7  Immunology ("BSACI"), the British Dietetic Association, Allergy UK, and the Anaphylaxis

8  Campaign – called for Nestle to suspend marketing of SpoonfulONE Products in the United

9  Kingdom due to the fact that "SpoonfulOne contains milligram quantities of the allergens, and

10 there is as yet not clear evidence that this product is effective to prevent allergy to the allergens

11 contained in the product."[28]

12     57.    These groups also pointed out that it was inappropriate to extrapolate that

13 SpoonfulONE Products would generate the same allergenic response as occurred in the LEAP and

14 EAT studies, which "contained much higher quantities of the allergens (in the order of grams not

15 milligrams) and did not include allergens such as shellfish, tree nuts or soy."[29]

16     58.    Following meetings between Nestle and the consortium of British allergist groups

17 on March 17, 2021 and March 31, 2021, to discuss the consortium's collective concerns with the

18 efficacy and marketing of SpoonfulONE Products, and rather than respond to the criticisms leveled

19 against the SpoonfulONE Products by the consortium and explain why they were wrong about the

20 SpoonfulONE Products, Nestle *immediately suspended* the launch of SpoonfulONE Products in

21 the United Kingdom on April 19, 2021, and closed down its website, spoonfulone.co.uk.[30]

22

23

24 [27] *Nestle Health Science invests in Before Brands, specialists in early childhood food allergy
   prevention*, NESTLE (Sept. 26, 2019), https://www.nestle.com/media/news/nestle-health-science-
25 investment-before-brands.

26 [28] Letter from Adam Fox et al., President, BSACI to Charlotte-Jane Duncaif, Nestle (undated).

27 [29] *Id.*

28 [30] *Nestle responds to our concerns over SpoonfulOne*, BSACI, https://www.bsaci.org/nestle-
   respond-to-our-concerns-over-spoonfulone/ (last visited Sept. 28, 2022); Letter from Sharan

59.     Because SpoonfulONE Products do not contain the 30mg of peanut, egg, or milk proteins as represented, SpoonfulONE's representations as to the composition and efficacy of its Products are false, misleading, and/or deceptive.

60.     Moreover, even if SpoonfulONE Products did, in fact, contain the advertised 30mg of peanut, egg, or milk proteins, such amounts are insufficient to introduce or promote tolerance of the food allergen.   The LEAP, EAT, and PETIT studies all used grams, not milligrams, of allergenic proteins to demonstrate tolerance.  Additionally, in their 2021 Food Allergy Prevention Guidelines, the European Academy of Allergy and Clinical Immunology ("EAACI") noted that infants consuming more than **two grams** of allergenic protein per week should achieve tolerance.[31]

61.     The only "science" purporting to support SpoonfulONE's milligram-dosage claim is its own white paper published on its website.[32]  This white paper concludes that

> [A] year of daily feeding of SpoonfulOne's complex mix of potential food allergens starting at a very young age may reduce the likelihood of becoming sensitized to commonly allergenic foods compared to single protein or dual-protein combinations.[33]

62.     The white paper, however cannot stand up to the scientific method or peer-review for several reasons.  ***First***, the "study" was not blind, much less double-blind.  ***Second***, the age range of the children participating in SpoonfulONE's "study" (two months to ten years) is not in line with research demonstrating that the critical window for inducing food allergen tolerance is between three and 11 months of age.  ***Third***, the participants in SpoonfulONE's "study" were not asked to report on compliance with or adherence to study procedures and it is unclear whether

Saduera, Head of UK Medical Affairs, Nestle UK Ltd, to Adam Fox, President, BSACI (Apr. 19, 2021), https://www.bsaci.org/wp-content/uploads/2021/04/SpoonfulOne-letter_19.04.21.pdf.

[31]   Susanne Halken, et al., *EAACI guideline: Preventing the development of food allergy in infants and young children* (2020 update) at 849, PEDIATRIC ALLERGY IMMUNOLOGY (Wiley Mar. 12, 2021), https://pubmed.ncbi.nlm.nih.gov/33710678/.

[32]   *SPOONFULONE™ MULTIPROTEIN BLEND FOR INFANTS & CHILDREN: Supporting Gentle Maintenance of Tolerance to Foods Most Commonly Responsible for Allergies*, SpoonfulONE   (2019),   https://cdn.shopify.com/s/files/1/1709/1113/files/SpoonfulOne_1Year FeedingStudy_WhitePaper.pdf?v=1613784582 (last visited Sept. 28, 2022).

[33]   *Id.* at 5.

hundreds of its participants who were only provided **one** or **two** of the proteins actually avoided the numerous other allergens. **Fourth**, the analyzed groups were created *post hoc*, which is particularly prone to bias. **Fifth**, SpoonfulONE's analysis (shown in figure 2 of the white paper), is fundamentally flawed. The paper uses averages of IgE and Th2 cell proliferation, but neither IgE nor Th2 levels are acceptable diagnostic tools for food allergy.[34] These tests are not accurate predictors for whether a child will actually have allergic reactions when exposed to a food, and should only be used in concert with clinical findings.[35] In any event, none of the IgE or Th2 levels measured by SpoonfulONE are indicative of a clinical allergy, even at the low level of accuracy of the test. **Sixth**, SpoonfulONE's paper asserts that the response to peanut allergens was enhanced by feeding with other proteins, but this view has been explicitly disproven by clinical trials.[36]

---

[34] Joshua A. Boyce, et al., *Guidelines for the Diagnosis and Management of Food Allergy in the United States*, 126:6 J. ALLERGY & CLINICAL IMMUNOLOGY S1 at 37 (Dec. 2010) ("Insufficient evidence exists to support the proposal that measurements of total serum IgE levels can be a sensitive and specific test for [food allergy]."), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4241964/; David M Fleischer, et al., *Oral Food Challenges in Children with a Diagnosis of Food Allergy*, 158:4 J. OF PEDIATRICS 578, 582 (Apr. 1, 2011) ("The results of this retrospective study demonstrate that a primary reliance on serum food-specific IgE testing to determine the need for food elimination diets in children, especially those with [atopic dermatitis ("AD")], is not sufficient."), https://www.jpeds.com/article/S0022-3476(10)00787-0/fulltext.

[35] Indeed, the Fleischer study is most troubling as it concludes that IgE testing like that SpoonfulONE exclusively relies on is particularly inappropriate for infants with AD – the group that is at the **highest risk** for developing food allergies (and thus has the greatest need for an early allergen introduction food product that actually works). *See* Alyssa Sweeney, et al., *Early intervention of atopic dermatitis as a preventive strategy for progression of food allergy*, 17 ALLERGY, ASTHMA & CLINICAL IMMUNOLOGY 30 at 2 (Mar. 16 2021) ("Studies have found a strong association between AD, particularly AD that is early-onset and severe, and other forms of allergic disease, including FA and asthma. A study found that infants with AD were six times more likely to have egg allergy and 11 times more likely to have peanut allergy by 12 months than infants without eczema. A population-based study found that infants who developed AD within the first year of life were at greater risk for developing FA as confirmed by oral food challenge, within 12 months (one in five infants with AD had FA as compared to one in 25 without AD)."), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7962338/.

[36] *See, e.g.*, George du Toit, et al., *The allergen-specificity of early peanut consumption and the impact on the development of allergic disease in the LEAP Study Cohort*, 141:4 J. ALLERGY & CLINICAL IMMUNOLOGY 1343-1353 at 2. (Apr. 2018) ("Early consumption of peanut in infants at high risk of peanut allergy is allergen-specific and does not prevent the development of other allergic disease, sensitization to other foods and aeroallergens, or reported allergic reactions to tree nuts and sesame. Furthermore, peanut consumption does not hasten the resolution of eczema or egg allergy."), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5889963/.

1   63.    Accordingly, SpoonfulONE's representations as to the efficacy of its Products are

2   false, misleading, and/or deceptive.

3   64.    Additionally, because SDS-PAGE testing is an insufficient method for assessing

4   the ability of food products to promote tolerance, SpoonfulONE's representations as to the

5   rigorous protein integrity testing it subjects it SpoonfulONE Products to are also false, misleading,

6   and/or deceptive.

7   65.    The composition of SpoonfulONE Products and their ability to introduce and

8   promote tolerance to food allergens is critical to consumers and it materially affects their decision

9   whether to purchase SpoonfulONE Products.   If consumers, including Plaintiffs, knew

10   Defendant's SpoonfulONE Products did not contain the represented 30mg of peanut, egg, or milk

11   protein or were otherwise ineffective in introducing food allergens or promoting tolerance at that

12   milligram-dosage level, they would not have purchased SpoonfulONE Products.   This is

13   particularly evident in the case of early allergenic introduction food products, like SpoonfulONE's

14   Products, which are expensive[37] and are only ever purchased by consumers for the express and

15   solitary purpose of introducing food allergens to promote tolerance of allergens in infants.  Thus,

16   Plaintiffs and Class members were injured and are entitled to a full refund of their purchases of

17   SpoonfulONE Products.

18   66.    Plaintiffs bring this action on behalf of themselves and other similarly situated

19   consumers who purchased SpoonfulONE Products to halt the dissemination of this false,

20   misleading, and deceptive advertising message, correct the misleading perception it has created in

21   the minds of consumers, and obtain redress for those who have purchased SpoonfulONE Products.

22   Based on Defendant's unjust enrichment and violations of New York, Minnesota, Texas,

23   California, and Alabama unfair competition, warranty, and/or false advertising laws (detailed

24

25

---

26   [37]  For example, a 28-Pack of Strawberry Puffs currently sells for $45.99 on SpoonfulONE's
website.   Strawberry Puffs, SpoonfulONE, https://www.spoonfulone.com/products/strawberry-
27   puffs-7-pack?variant=31896197627968 (last visited Sept. 28, 2022).  Given that SpoonfulONE's
website directs consumers to give their infants one serving per day for 365 days, the costs to use
28   SpoonfulONE Products as directed is exorbitant. *See How It Works*, *supra* n.3.

below), Plaintiffs seek damages, declaratory, injunctive, and restitutionary relief for consumers who purchased the SpoonfulONE Products.

**Plaintiffs' Common Experiences with SpoonfulONE's
Deceptively Advertised Products**

**Vashondra Harris**

67.     Harris is a resident of Little Canada, Minnesota who purchased the Products for consumption and not resale.

68.     Harris purchased the Products, specifically the SpoonfulONE Oat Crackers Vanilla and SpoonfulONE Strawberry Puffs, from local Target and Walmart stores.   Harris fed the Products to her now 16-month-old child twice a day from the time her child was five-months-old until July 2022.

69.     Based and in reliance on SpoonfulONE's marketing and advertising, Harris reasonably believed that the Products were effective in preventing the development of food allergies.  Due to the false and misleading claims and omissions by Defendant, Harris was unaware the Products were ineffective at preventing the development of food allergies and would not have purchased the SpoonfulONE Products had that information been fully disclosed.

**Damany Browne**

70.     Browne is a resident of Brooklyn, New York who purchased the Products for consumption and not resale.

71.     Plaintiff Browne purchased the Products, specifically the SpoonfulONE Oat Crackers, SpoonfulONE Crunchy Puffs Ranch, and SpoonfulONE Strawberry Puffs, from local Target and Walmart stores.  Browne fed the Products to his now three-year-old child twice a day from the time his child was 13-months-old until December 2021.

72.     Based and in reliance on SpoonfulONE's marketing and advertising, Browne reasonably believed that the products were effective in preventing the development of food allergies.  Due to the false and misleading claims and omissions by Defendant, Browne was unaware the Products were ineffective at preventing the development of food allergies and would not have purchased the Products had that information been fully disclosed.

**Tiffany Weber**

73.    Weber is a resident of Arlington, Texas who purchased the Products for consumption and not resale.

74.    Plaintiff Weber purchased the Products, specifically two boxes of the SpoonfulONE Strawberry Puffs, from Amazon online.  Weber fed the Products to her now four-year-old child every other day for a period of two months starting at age one.

75.    Based and in reliance on SpoonfulONE's marketing and advertising, Weber reasonably believed that the products were effective in preventing the development of food allergies.  Due to the false and misleading claims and omissions by Defendant, Weber was unaware the Products were ineffective at preventing the development of food allergies and would not have purchased the Products had that information been fully disclosed.

**Heather MacLean**

76.    MacLean is a resident of Oakland, California who purchased the Products for consumption and not resale.

77.    MacLean purchased the Products, specifically SpoonfulONE Puffs Banana, SpoonfulONE Puffs Blueberry Sweet Potato, SpoonfulONE Puffs Pumpkin, SpoonfulONE Puffs Strawberry, SpoonfulONE Puffs Tomato Carrot, SpoonfulONE Puffs Variety from Amazon online.  MacLean purchased the products for her now nine-month-old son in June 2022.

78.    Based and in reliance on SpoonfulONE's marketing and advertising, MacLean reasonably believed that the products were effective in preventing the development of food allergies.  Due to the false and misleading claims and omissions by Defendant, MacLean was unaware the Products were ineffective at preventing the development of food allergies and would not have purchased the Products had that information been fully disclosed.

**Sonia Fowler**

79.    Fowler is a resident of Birmingham, Alabama who purchased the Products for consumption and not resale.

80.    Fowler purchased the Products, specifically SpoonfulONE Puffs Strawberry, from Target. Fowler purchased the Products for her now two-year-old daughter on or about April 2021.

CLASS ACTION COMPLAINT –                                                          - 19

81.     Based and in reliance on SpoonfulONE's marketing and advertising, Fowler reasonably believed that the Products were effective in preventing the development of food allergies.  Due to the false and misleading claims and omissions by Defendant, Fowler was unaware the Products were ineffective at preventing the development of food allergies and would not have purchased the Products had that information been fully disclosed.

**CLASS ACTION ALLEGATIONS**

82.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2), (b)(3), and/or (c)(4) ("Rule 23") on behalf of themselves and a class of other similarly situated individuals ("Nationwide Class" or "Class"), as defined specifically below:

**All persons within the United States who purchased a SpoonfulONE Product**.

83.     Alternatively, Plaintiffs seek certification of Minnesota, New York, Texas, California, and Alabama law claims on behalf of alternative Minnesota, New York, Texas, California, and Alabama Classes, defined as follows:

**All persons within Minnesota who purchased a SpoonfulONE Product ("Minnesota Class").**

**All persons within New York who purchased a SpoonfulONE Product ("New York Class").**

**All persons within Texas who purchased a SpoonfulONE Product ("Texas Class").**

**All persons within California who purchased a SpoonfulONE Product ("California Class").**

**All persons within Alabama who purchased a SpoonfulONE Product ("Alabama Class").**[38]

84.     The alternative Minnesota, New York, Texas, California, and Alabama Classes assert claims under their respective state laws against Defendant SpoonfulONE for violations of state consumer protection statutes, state false advertising laws, and/or state common law.

---

[38]   The Minnesota, New York, Texas, California, and Alabama Classes may be collectively referred to herein as the "State Classes," and, for ease of reference, the Nationwide Class and State Classes may be collectively referred to as the "Class."

85.     Excluded from the Nationwide Class and the alternative Minnesota, New York, Texas, California, and Alabama Classes are Defendant; any person who is an officer, director, partner or controlling person of Defendant, including any of its subsidiaries or affiliates; any entity in which Defendant has a controlling interest; and the legal representatives, heirs, successors and assigns of any such excluded person or entity; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and judicial officers presiding over this matter, members of their immediate family, and members of their judicial staff.

86.     Plaintiffs satisfy the numerosity, commonality, typicality, and adequacy prerequisites for suing as a representative party pursuant to Rule 23.

87.     **Numerosity**. The members of the Classes are so numerous that their joinder is impracticable.  Plaintiffs are informed and believe that the proposed Classes contain thousands of purchasers of the SpoonfulONE Products who have been damaged by Defendant's conduct as alleged.

88.     **Commonality**. Plaintiffs' and Class members' claims raise predominately common factual and legal questions that can be answered for all Class members through a single Class-wide proceeding. For example, to resolve any Class member's claims, it will be necessary to answer the following questions, and the answer to each of these questions will necessarily be the same for each Class member:

(a)     Whether Defendant engaged in the conduct alleged herein;

(b)     Whether Defendant manufactured, advertised, promoted, and sold SpoonfulONE Products that it knew were falsely advertised, marketed, and sold, and withheld material information regarding the SpoonfulONE Products from consumers or purposely misrepresented the SpoonfulONE Products to consumers;

(c)     Whether Plaintiffs and absent Class members received the benefit of their bargain in purchasing the SpoonfulONE Products;

(d)     Whether Plaintiffs and absent Class members overpaid for the SpoonfulONE Products in light of the false, misleading, and deceptive marketing of the SpoonfulONE Products, and are entitled to a full refund of their purchases;

1       (e)     Whether Defendant concealed material facts from Plaintiffs and absent

2  Class members;

3       (f)     Whether the true nature of the SpoonfulONE Products constitute material

4  facts that reasonable consumers would have considered in deciding whether to purchase the

5  SpoonfulONE Products;

6       (g)    Whether Defendant's conduct violated consumer protection statutes, false

7  advertising laws, warranty laws, and common laws asserted herein;

8       (h)    Whether Plaintiffs and absent Class members are entitled to equitable relief,

9  including, but not limited to, restitution, declaratory and injunctive relief.

10      (i)     Whether Defendant has been unjustly enriched as a result of its improper

11  conduct, such that it would be inequitable for Defendant to retain the benefits conferred upon it by

12  Plaintiffs and the other Class members; and

13      (j)     The aggregate compensatory or consequential damages that should be

14  awarded to Plaintiffs and absent Class members.

15      89.    **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Class

16  because Plaintiffs' claims are based on the same legal theories and the same violations of law.  In

17  addition, Plaintiffs' claims are typical of Class members' claims as each arises from the same

18  conduct by Defendant.

19      90.    **Adequacy**. Plaintiffs will adequately represent the proposed Class members.

20  Plaintiffs have retained counsel that are competent and experienced in class actions and consumer

21  protection and intends to pursue this action vigorously.  Plaintiffs have no interests contrary to or

22  in conflict with the interests of Class members.

23      91.    In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs satisfy the

24  requirements for maintaining a class action under Rule 23(b)(3). Common questions of law and

25  fact (identified above) predominate over any questions affecting only individual Class members

26  and a class action is superior to individual litigation. Plaintiffs know of no difficulty to be

27  encountered in the management of this action that would preclude its maintenance as a class action.

28

92.     Furthermore, Plaintiffs satisfy the requirements of Rule 23(b)(2) because Defendant has acted and/or refused to act on grounds generally applicable to the Class, making final injunctive relief or corresponding declaratory relief appropriate. Injunctive relief is particularly necessary in this case because: (1) Plaintiffs and absent Class members desire to purchase products with the same qualities and attributes as Defendant advertised the SpoonfulONE Products to have; (2) if Defendant actually manufactured SpoonfulONE Products with the attributes and qualities advertised, Plaintiffs would purchase those SpoonfulONE Products; (3) Plaintiffs do not, however, have the ability to determine whether Defendant's representations concerning the SpoonfulONE Products will be truthful if they purchase SpoonfulONE Products in the future.  Indeed, Plaintiffs, and absent Class members may in the future want to purchase SpoonfulONE Products, but they expect that Defendant will continue to misrepresent or conceal material information concerning those products.

93.     Finally, particular issues are also appropriate for certification under Rule 23(c)(4) because the claims present particular, common questions of law or fact (identified above), the resolution of which would materially advance the resolution of this matter and the parties' interests therein.

### TOLLING OF APPLICABLE LIMITATIONS PERIODS

94.     **Discovery Rule Tolling.**  Neither Plaintiffs nor absent Class members could have discovered, through the exercise of reasonable diligence, that their SpoonfulONE Products were falsely and deceptively advertised, marketed, and sold by Defendant within the time period of any applicable statutes of limitation.   As described herein, substantial scientific expertise is required to uncover and comprehend the facts alleged herein, and the ordinary reasonable consumer could not – with reasonable diligence – discover that SpoonfulONE Products did not contain the advertised food allergen proteins necessary to create the intended immunity.

95.     **Fraudulent Concealment Tolling.**  Throughout the time period relevant to this action, Defendant concealed from and failed to disclose to Plaintiffs and absent Class members vital information concerning the SpoonfulONE Products.  Indeed, Defendant kept Plaintiffs and absent Class members ignorant of vital information essential to the pursuit of their claims.  As a

1    result, neither Plaintiffs nor absent Class members could have discovered the true nature of the

2    SpoonfulONE Products, even upon reasonable exercise of diligence.

3      96. Despite its knowledge of the above, Defendant failed to disclose and concealed,

4    and continues to conceal, critical information from Plaintiffs and absent Class members, even

5    though, at any point in time, it could have communicated material information through individual

6    correspondence, media releases, or other means.  To be sure, Defendant continues to misrepresent

7    the attributes and qualities of its SpoonfulONE Products, and has continued to conceal the truth.

8      97. Plaintiffs and absent Class members relied on Defendant to disclose the truth about

9    its SpoonfulONE Products, because the truth of SpoonfulONE Products were hidden and not

10   discoverable through reasonable efforts by Plaintiffs and absent Class members.

11     98. Thus, the running of all applicable statutes of limitation has been suspended with

12   respect to any claims that Plaintiffs and absent Class members have sustained as a result of the

13   falsely advertised SpoonfulONE Products, by virtue of the fraudulent concealment doctrine.

14     99. **Estoppel.**  Defendant was under a continuous duty to disclose to Plaintiffs and the

15   other Class members the true nature, quality, and character of its SpoonfulONE Products.

16   Defendant, however, concealed and continues to conceal the true nature, quality, and character of

17   the SpoonfulONE Products, as described herein.  Based upon the foregoing, Defendant is estopped

18   from relying on any statutes of limitations in defense of this action.

19   **CAUSES OF ACTION**

20   **CLAIMS ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, THE**
     **CALIFORNIA, NEW YORK, TEXAS, MINNESOTA, AND ALABAMA CLASSES**

21   **COUNT I**

22   **Breach of Implied Warranty – Magnuson-Moss Warranty Act ("MMWA")**
23   **(15 U.S.C. §2301, *et seq.*)**

24     100. Plaintiffs incorporate the above allegations in paragraphs 1 through 99 by reference.

25     101. Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or in

26   the alternative, on behalf of their respective State Classes.

27     102. Plaintiffs and the Class members are "consumers" within the meaning of the

28   MMWA, 15 U.S.C. §2301(3).

CLASS ACTION COMPLAINT –              - 24 -

103.    Defendant is a "supplier" and "warrantor" within the meaning of the MMWA, §§2301(4), (5).

104.    Defendant's SpoonfulONE Products are "consumer products" within the meaning of the MMWA, §2301(1).

105.    Defendant made implied warranties arising under state law regarding its SpoonfulONE Products within the meaning of the MMWA, §2301(7).

106.    Defendant's warranties were the basis of the bargain of the contract between Plaintiffs and the Class members and Defendant for the sale of the SpoonfulONE Products to Plaintiffs and the Class members.

107.    Defendant has been afforded a reasonable opportunity to cure its breach of its warranties.

108.    The amount in controversy of Plaintiffs' and the Class members' individual claims meets or exceeds the sum of $25.

109.    The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

110.    Further, Defendant breached these implied warranties because the SpoonfulONE Products do not perform as Defendant represented or they are not fit for their intended use, and Defendant did not and refused to cure the defects.  Defendant provided the SpoonfulONE Products in a non-merchantable condition, such that they are worthless.

111.    Defendant violated the MMWA by failing to comply with the implied warranties it made to the Class by, among other things: (a) selling SpoonfulONE Products that were defective in workmanship, material, or design; and (b) refusing to cure or refund the SpoonfulONE Products after it was revealed that they were unable to perform as warranted.

112.    Resorting to any informal dispute settlement procedure and/or affording Defendant another opportunity to cure these breaches of warranties is unnecessary and/or futile.

113.    Any remedies available through any informal dispute settlement procedure would be inadequate under these circumstances, as Defendant has failed to remedy the problems

1  associated with the SpoonfulONE Products, and, as such, has indicated it has no desire to

2  participate in such a process at this time.

3      114.    Any requirement – whether under the MMWA or otherwise – that Plaintiffs resort

4  to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to

5  cure its breach of warranties is excused and thereby deemed satisfied.

6      115.    As a direct and proximate cause of Defendant's breach of implied warranties,

7  Plaintiffs and the Class members sustained damages and other losses in an amount to be

8  determined at trial.

9  **COUNT II**

10  **Unjust Enrichment**

11      116.    Plaintiffs incorporate the above allegations in paragraphs 1 through 99 by reference.

12      117.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or in

13  the alternative, on behalf of their respective State Classes.

14      118.    Defendant was and is, at all relevant times, a manufacturer and seller of the

15  SpoonfulONE Products.

16      119.    Plaintiffs and the Class members paid for the SpoonfulONE Products for the

17  purpose of introducing food allergens to their infant children.

18      120.    Plaintiffs and the Class members paid for the SpoonfulONE Products that they

19  reasonably expected to contain the amount of food allergen proteins marketed, advertised, and sold

20  and had the effectiveness of preventing the development of allergies from consuming the

21  SpoonfulONE Products.

22      121.    Plaintiffs and the Class Members did not receive SpoonfulONE Products that fulfill

23  their sole purpose of preventing the development of allergies from consuming the SpoonfulONE

24  Products.

25      122.    Rather, Defendant sold the defective and/or inadequate SpoonfulONE products to

26  Plaintiffs and the Class members and benefitted financially from the sale of such.

27      123.    These unlawful acts caused Plaintiffs and the Class members to suffer injury, lose

28  money, and otherwise be deprived of the benefit of fully functioning SpoonfulONE Products.

124.     Defendant has received and retained unjust benefits from Plaintiffs and the Class members.

125.     It is unequitable and unconscionable for Defendant to retain these benefits.

126.     Defendant knowingly accepted the unjust benefits of its unjust and unfair conduct.

127.     As a result of Defendant's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and the Class members, in an amount to be proven at trial.

128.     Plaintiffs and the Class have no adequate remedy at law.

## COUNT III

### Breach of Express/Implied Warranty of Merchantability

129.     Plaintiffs incorporate the above allegations in paragraphs 1 through 99 by reference.

130.     Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or in the alternative, on behalf of their respective State Classes.

131.     Defendant is and was, at all relevant times, a "merchant" and "seller" with respect to SpoonfulONE Products.

132.     The SpoonfulONE Products are and were, at all relevant times, "goods."

133.     A warranty that the SpoonfulONE Products were in merchantable condition and fit for the ordinary purpose for which the products were used is implied by law.

134.     The SpoonfulONE Products, when sold and at all times thereafter, were not able to perform as Defendant represented, and therefore not fit for the ordinary purpose for which the products are used.

135.     Defendant knowingly and/or recklessly sold a defective and/or inadequate product without informing consumers about such.

136.     Defendant possessed superior knowledge of the problems with its SpoonfulONE Products and was provided notice of these issues by way of numerous complaints and communications, including the communications discussed in this Complaint, within a reasonable amount of time.

137.   Plaintiffs and the Nationwide Class or alternative State Classes paid for the SpoonfulONE Products' ability to promote oral tolerance of common food allergens in infants by purportedly introducing allergenic proteins into their diets.

138.   Plaintiffs and the Nationwide Class or alternative State Classes were the intended beneficiaries of the implied warranties made by Defendant because they were the purchasers of such and the end users of such.

139.   Defendant, who manufactures and markets the SpoonfulONE Products, knew that Plaintiffs and the Nationwide Class or alternative State Classes were the end users of the SpoonfulONE Products when Defendant entered into any and all sales contracts and subcontracts for the SpoonfulONE Products, and Defendant's intent was to benefit Plaintiffs and the Nationwide Class or alternative State Classes by operation of law pursuant to the "implied covenant of good faith and fair dealing" contained within any and all sales contracts and subcontracts for the SpoonfulONE Products entered into by Defendant.

140.   As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and the Nationwide Class or alternative State Classes have been damaged in an amount to be proven at trial.

141.   Plaintiffs, on behalf of themselves and the Nationwide Class or alternative State Classes, seek monetary damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**COUNT IV**

**Fraudulent Concealment**

142.   Plaintiffs incorporate the above allegations in paragraphs 1 through 99 by reference.

143.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or in the alternative, on behalf of their respective State Classes.

144.   Defendant fraudulently concealed and suppressed material facts concerning the quality of the SpoonfulONE Products, including the fact that the Products were ***not*** effective in preventing the development of food allergies.

145.    Despite advertising and marketing the SpoonfulONE Products as being effective in preventing the development of food allergies, Defendant knew when it manufactured, marketed, and sold the SpoonfulONE Products that the SpoonfulONE Products could not do so.

146.    Defendant failed to disclose these facts and others to consumers at the time it manufactured, marketed, and sold the SpoonfulONE Products, and Defendant knowingly and intentionally engaged in concealment in order to boost sales and revenue, maintain its competitive edge in the early food allergen introduction market, and obtain windfall profit.  Through its active concealment and/or suppression of these material facts, Defendant sought to increase consumer confidence in the SpoonfulONE Products, and to falsely assure purchasers that the SpoonfulONE Products were effective in preventing the development of food allergies by purportedly introducing allergenic proteins into their diets.  Defendant engaged in this behavior to protect its profits, avoid recalling or replacing the SpoonfulONE Products that would damage the brand's image, cost it money, and undermine its competitiveness in the early food allergen introduction industry.

147.    Plaintiffs and the Class members were unaware, and could not reasonably discover on their own, that Defendant's representations were false and misleading, or that it had omitted material facts relating to the SpoonfulONE Products.

148.    Defendant had a duty to disclose, rather than conceal and suppress, the full scope and qualities of its Products because:

(a)    Defendant had exclusive knowledge or far superior knowledge of the scientific research about early food allergen introduction to promote oral tolerance in infants and the concealment thereof;

(b)    the facts regarding the Products' effectiveness in preventing the development of food allergies were known and/or accessible only to Defendant;

(c)    Defendant knew Plaintiffs and the Class members did not know about, or could not reasonably discover, the truth about the Products' effectiveness in preventing the development of food allergies and the concealment thereof; and

(d)    Defendant made representations and assurances about the qualities of the SpoonfulONE Products, and about the Products' effectiveness in preventing the development of

1  food allergies that were misleading, deceptive, and incomplete without the disclosure of the fact

2  that the milligram dosage of food allergen proteins in the Products, even if true, could not promote

3  oral tolerance of food allergens.

4        149.    These omitted and concealed facts were material because a reasonable consumer

5  would rely on them in deciding to purchase the SpoonfulONE Products, and because they

6  substantially reduced the value of the SpoonfulONE Products purchased by Plaintiffs and Class

7  members – indeed, reduced the value to *zero*.  Whether the SpoonfulONE Products were of sound

8  quality, reliable, and whether Defendant stood behind such Products would have been an important

9  factor in Plaintiffs' and the Class members' decisions to purchase the SpoonfulONE Products.

10  Plaintiffs and Class members trusted Defendant not to sell the SpoonfulONE Products that were

11  inadequate and/or defective and worthless.

12        150.    Defendant intentionally and actively concealed and suppressed these material facts

13  to falsely assure consumers that their SpoonfulONE Products were of a quality capable of

14  performing as represented by Defendant and reasonably expected by consumers.

15        151.    Plaintiffs and Class members were unaware of these omitted material facts and

16  would not have purchased the Products at all if they had known of the concealed and suppressed

17  facts.  Plaintiffs and Class members did not receive the benefit of their bargain due to Defendant's

18  fraudulent concealment.  Plaintiffs' and Class members' actions in purchasing the SpoonfulONE

19  Products were justified.  Defendant was in exclusive control of the material facts, and such facts

20  were not known or reasonably knowable to the public, Plaintiffs, or Class members.

21        152.    Plaintiffs and Class members relied to their detriment upon Defendant's reputation,

22  fraudulent misrepresentations, and material omissions regarding the quality, effectiveness, and

23  reliability of the SpoonfulONE Products.

24        153.    As a direct and proximate result of Defendant's deceit and fraudulent concealment,

25  including its intentional suppression of true facts, Plaintiffs and Class members suffered injury.

26  They purchased SpoonfulONE Products that had no value by reason of Defendant's concealment

27  of, and failure to disclose, the Products' inability to promote oral tolerance of food allergens.

28

154.    Accordingly, Defendant is liable to the Nationwide Class or State Classes for their damages in an amount to be proven at trial.

155.    On information and belief, Defendant has still not made full and adequate disclosure and continues to defraud Plaintiffs and Class members.  Defendant also continues to conceal material information regarding the Products' effectiveness in preventing the development of food allergies.

156.    Defendant's acts were done deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class members' rights. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**CLAIMS ON BEHALF OF THE NATIONWIDE CLASS OR THE ALTERNATIVE CALIFORNIA CLASS**

**COUNT V**

**Violation of the California Consumer Legal Remedies Act ("CLRA")**
**(Cal. Civ. Code §1750, *et seq.*)**

157.    Plaintiffs incorporate the above allegations in paragraphs 1 through 99 by reference.

158.    Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Class or, alternatively, the California Class.

159.    Plaintiffs allege, on information and belief that: (a) the decisions of SpoonfulONE concerning the advertising and marketing of SpoonfulONE Products emanate from SpoonfulONE's headquarters in Menlo Park, California; (b) SpoonfulONE's decisions on how to present SpoonfulONE Products in advertising in the United States emanate from its headquarters in Menlo Park, California; (c) relevant personnel from SpoonfulONE work in SpoonfulONE's headquarters in Menlo Park, California, or coordinate and make decisions concerning the above through facilities and other personnel in Menlo Park, California.  For these reasons, Plaintiffs and the Class' claims emanate from SpoonfulONE's actions in California and it is appropriate for SpoonfulONE to be held to comply with California law on a nationwide basis.

160.    SpoonfulONE is a "person" as that term is defined in Cal. Civ. Code §1761(c).

161.     Plaintiffs and the Class members are "consumers" as that term is defined in Cal. Civ. Code §1761(d).

162.     SpoonfulONE engaged in unfair and deceptive acts in violation of the CLRA, by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class members that its SpoonfulONE Products were not effective in preventing the development of food allergies.  These acts and practices violate, at a minimum, the following sections of the CLRA:

(a)(2) Misrepresenting the source, sponsorship, approval, or certification of goods or services.

(a)(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have.

(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

(a)(9) Advertising goods or services with intent not to sell them as advertised.

163.     SpoonfulONE's unfair or deceptive acts or practices occurred repeatedly in its trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk to the health and welfare of the public insofar as SpoonfulONE lulled consumers into believing that they were introducing food allergen proteins to their infants to promote tolerance to food allergies, but were instead unwittingly feeding them what are essentially placebos.

164.     SpoonfulONE knew that its SpoonfulONE Products were defectively designed or manufactured, would fail to perform their essential function, and were not suitable for their intended use.

165.     SpoonfulONE was under a duty to Plaintiffs and the Class members to disclose the defective nature of the SpoonfulONE Products and the fact that the Products were not effective in preventing the development of food allergies because:

1      (a) Defendant was in a superior position to know the true state of facts about

2    the Products' effectiveness in introducing food allergens or preventing the development of food

3    allergies;

4      (b) Plaintiffs and Class members could not reasonably have been expected to

5    learn or discover that the SpoonfulONE Products were not effective in introducing food allergens

6    or preventing the development of food allergies;

7      (c) Defendant knew that Plaintiffs and the Class members could not reasonably

8    have been expected to learn or discover that the SpoonfulONE Products were not effective in

9    introducing food allergens or preventing the development of food allergies; and

10      (d) Defendant actively concealed that the Products were not effective in

11    introducing food allergens or preventing the development of food allergies by knowingly and

12    continually selling, advertising, marketing, and refusing to recall its SpoonfulONE Products from

13    the market.

14      166. In failing to disclose that the Products were not effective in introducing food

15    allergens or preventing the development of food allergies, Defendant has knowingly and

16    intentionally concealed material facts and breached its duty to disclose.

17      167. The facts concealed or not disclosed by SpoonfulONE to Plaintiffs and the Class

18    members are material in that a reasonable consumer would have considered them to be important

19    in deciding whether to purchase Defendant's SpoonfulONE Products or pay a lesser price for them.

20    Had Plaintiffs and the Class known about the true nature of the SpoonfulONE Products, they would

21    not have purchased them, or would have paid less for them.

22      168. On October 27, 2022, Plaintiffs served a demand, dated October 27, 2022, on

23    Defendant pursuant to Cal. Civ. Code §1782.  A copy of the letter is attached hereto as Exhibit B.

24      169. Plaintiffs and Class members' injuries were proximately caused by Defendant's

25    fraudulent and deceptive business practices.

26      170. Plaintiffs and the Class members seek equitable relief under the CLRA.  Plaintiffs

27    will, after 30 days from the date of their demand letter, amend this Complaint without leave of

28

CLASS ACTION COMPLAINT –                                                                                      - 33 -

1   Court, as permitted by California Civil Code §1782, to include claims for actual and punitive

2   damages (as may be appropriate) if a full and adequate response to their letter is not received.

3                                          **COUNT VI**

4              **Violation of the California Unfair Competition Law ("UCL")**
                           **(Cal. Bus. & Prof. Code §17200, *et seq.*)**

5       171.    Plaintiffs incorporate the above allegations in paragraphs 1 through 99 by reference.

6
        172.    Plaintiffs bring this claim individually and on behalf of other members of the
7
    Nationwide Class or, alternatively, the California Class.
8
        173.    The UCL, Cal. Bus. & Prof. Code §17200, *et seq.*, prohibits any "unlawful,"
9
    "fraudulent," or "unfair" business act or practice and any false or misleading advertising.  In
10
    pertinent part, the UCL provides that "[u]nfair competition shall mean and include unlawful,
11
    unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading
12
    advertising[.]"
13
        174.    **Unlawful Business Practices**: In the course of conducting business, Defendant
14
    committed "unlawful" business practices in violation of the UCL by, *inter alia*, violating other
15
    laws, including, but not limited to, the MMWA, CLRA, False Advertising Law, Cal. Bus. & Prof.
16
    Code §17500 ("FAL"), and statutory laws of the states of Texas, New York, and Minnesota.
17
        175.    Plaintiffs reserve the right to allege other violations of law, which constitute other
18
    unlawful business acts or practices. Such conduct is ongoing and continues to this date.
19
        176.    **Unfair Business Practices**: In the course of conducting business, Defendant
20
    committed "unfair" business acts or practices by, *inter alia*, representing to Plaintiffs and the
21
    Nationwide Class or, alternatively, the California Class that its SpoonfulONE Products were that
22
    effective in preventing the development of food allergies capable of introducing food allergen
23
    proteins.
24
        177.    Even without these misrepresentations, Plaintiffs and the Nationwide Class or,
25
    alternatively, the California Class were entitled to, and did, assume Defendant would disclose that
26
    its Products were not effective in preventing the development of food allergies, and Defendant was
27
    the only one in possession of that material information, which it had a duty to disclose.
28

CLASS ACTION COMPLAINT –                                                                    - 34 -

178.    Defendant violated the UCL by misrepresenting, both by affirmative conduct and by omission, the quality of its Products and the Products' ability to promote food allergen tolerance.  If Defendant told the truth about its Products, Plaintiffs and the Nationwide Class or, alternatively, the California Class would not have suffered the damages related to their purchases of the Products.

179.    Under the "balancing test," the harm caused by Defendant's actions and omissions, as described in detail above, greatly outweigh any perceived utility.  Indeed, there is no benefit or utility to lulling consumers into believing that the Products are capable of introducing food allergen proteins to infants to promote tolerance to food allergies and effective in preventing the development of food allergies, when the Products cannot.

180.    Defendant also engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to the public at large.

181.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

182.    Plaintiffs and the Nationwide Class or, alternatively, the California Class suffered injury in fact and lost money or property as the result of Defendant's unfair business practices in the form of money paid for worthless Products.

183.    **Fraudulent Business Practices**: In the course of conducting business, Defendant committed "fraudulent business act[s] or practices" and deceptive or misleading advertising by, *inter alia*, representing that its Products are capable of introducing food allergen proteins to infants to promote tolerance to food allergies.

184.    Defendant's actions, claims, and misleading statements, as more fully set forth above, are misleading and/or likely to deceive the consuming public within the meaning of the UCL.

185.    Plaintiffs relied on Defendant's representations when purchasing the Products and were in fact injured as a result of those false, misleading, and deceptive representations.

186.    As alleged herein, Plaintiffs and the Nationwide Class or, alternatively, the California Class have suffered injury in fact and lost money or property at the time of purchase as

a result of Defendant's conduct because they were exposed to and purchased SpoonfulONE Products in reliance on the Defendant's false representations, but did not receive SpoonfulONE Products that are effective in preventing the development of food allergies.

187.     Unless restrained and enjoined, Defendant will continue to engage in the above described conduct.  Accordingly, injunctive relief is appropriate.

188.     Plaintiffs, on behalf of themselves all other similarly-situated members of the Nationwide Class or, alternatively, the California Class, and the general public, seek declaratory relief and an injunction prohibiting Defendant from continuing such practices, corrective advertising, restitution of all money obtained from Plaintiffs and the Class members collected as a result of unfair competition, and all other relief this Court deems appropriate, consistent with Cal. Bus. & Prof. Code §17203.

## COUNT VII

### Violation of the California False Advertising Law
### (Cal. Bus. & Prof. Code §17500, *et seq.*)

189.     Plaintiffs incorporate the above allegations in paragraphs 1 through 99 by reference.

190.     Plaintiffs bring this claim individually and on behalf of other members of the Nationwide Class or, alternatively, the California Class.

191.     The FAL, Cal. Bus. & Prof. Code §17500, *et seq.*, makes it unlawful for any corporation or employee thereof to make or disseminate, or case to be made or disseminated, any untrue or misleading statement in connection with the sale of any good or service, when it is known or could have been known by the exercise of reasonable care to be untrue or misleading.

192.     Defendant caused to be made or disseminated through California and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known, to Defendant to be untrue and misleading to consumers, including Plaintiffs and Class members.

193.     Defendant has violated the FAL because the misrepresentations and omissions regarding the effectiveness in preventing children from developing allergies from consuming the

SpoonfulONE Products as set forth in this Complaint were material and likely to deceive a reasonable consumer.

194.    Defendant has also violated the FAL because the misrepresentations and omissions regarding the testing and effectiveness of the SpoonfulONE Products as set forth in this Complaint were material and likely to deceive a reasonable consumer.

195.    Plaintiffs and Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices. In purchasing the SpoonfulONE Products, Plaintiffs and Class members relied on the misrepresentations and/or omissions of Defendant with respect to the effectiveness of preventing the development of allergies from consuming the SpoonfulONE Products. Defendant's representations turned out to be false because the SpoonfulONE Products have no effectiveness in preventing the development of allergies and are unsafe because they lull consumers into believing that they promote food allergen tolerance when they do not. Had Plaintiffs and Class members known this, they would not have purchased the SpoonfulONE Products and/or paid as much for them.

196.    Accordingly, Plaintiffs and Class members overpaid for the SpoonfulONE Products and did not receive the benefit of their bargain.

197.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business.  Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

198.    Plaintiffs, individually and on behalf of the Class, request that this Court enter such Orders or judgments as may be necessary to restore to Plaintiffs and Class members any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement and all other relief allowed under the FAL, including reasonable attorneys' fees and costs under Cal. Civ. Proc. Code §1021.5.

**CLAIMS ON BEHALF OF THE NEW YORK CLASS**

**COUNT VIII**

**Violation of New York Gen. Bus. Law §349**

199.    Plaintiff Browne incorporates the above allegations in paragraphs 1 through 99 by reference.

200.    Browne brings this claim individually and on behalf of the New York Class against Defendant.

201.    Browne and the New York Class members are "persons" under N.Y. Gen. Bus. Law §349(h), the New York Consumer Protection From Deceptive Acts and Practices statute ("NY GBL").

202.    Defendant's actions as set forth herein occurred in the conduct of trade or commerce under the NY GBL.

203.    The NY GBL makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §349.  Defendant's conduct, as set forth herein, constitutes deceptive acts or practices under this section.  As alleged in more detail herein, at the time Defendant warranted and sold the SpoonfulONE Products, it knew that the SpoonfulONE Products did not conform to the warranty and were inherently defective and/or inadequate, and Defendant improperly concealed material facts regarding its SpoonfulONE Products.  Browne and the New York Class members were therefore induced to purchase the SpoonfulONE Products under false pretenses.

204.    Browne and the New York Class members had no way of knowing that Defendant's representations were false and misleading, and that the SpoonfulONE Products were not effective in preventing the development of food allergies.

205.    Defendant violated the NY GBL by, at a minimum: (a) representing that the SpoonfulONE Products have characteristics, uses, benefits, and qualities which they do not have; (b) representing that the SpoonfulONE Products are of a particular standard, quality, and grade when they are not; (c) advertising the SpoonfulONE Products with the intent not to sell them as

1    advertised; and (d) representing that the subject of a transaction involving the SpoonfulONE

2    Products has been supplied in accordance with a previous representation when it had not.

3          206.    Defendant knowingly and intentionally misrepresented material facts regarding the

4    SpoonfulONE Products with the intent to mislead Browne and the New York Class members.

5          207.    Defendant knew or should have known that their conduct violated the NY GBL.

6          208.    Defendant owed Browne and the New York Class members a duty to disclose the

7    true nature of the SpoonfulONE Products, because Defendant:

8                (a)     possessed exclusive knowledge that they were manufacturing, selling, and

9    distributing products throughout the United States that did not perform as advertised;

10               (b)     intentionally concealed the foregoing from Browne and the New York Class

11   members; and/or

12               (c)     made incomplete representations about the SpoonfulONE Products

13   generally, and the effectiveness and reliability of the SpoonfulONE Products particularly, while

14   purposefully withholding material facts from Browne and the New York Class members that

15   contradicted these representations.

16         209.    Defendant's false and misleading statements about the SpoonfulONE Products

17   were material to Browne and to the New York Class members.

18         210.    Defendant's unfair or deceptive acts or practices were likely to, and did, in fact,

19   deceive reasonable consumers, including the New York Class members, about the quality,

20   effectiveness, and reliability of the SpoonfulONE Products, and the true value of the SpoonfulONE

21   Products.

22         211.    Defendant's violations present a continuing risk to the New York Class members,

23   as well as to the general public.  Defendant's unlawful acts and practices complained of herein

24   affect the public interest.

25         212.    Browne and the New York Class members suffered ascertainable loss and actual

26   damages as a direct and proximate result of Defendant's misrepresentations and its concealment

27   of and failure to disclose material information.  Defendant had an ongoing duty to all their

28   customers to refrain from unfair and deceptive practices under the NY GBL.  All purchasers of the

SpoonfulONE Products suffered ascertainable loss as a result of Defendant's deceptive and unfair acts and practices made in the course of Defendant's business by virtue of having paid for worthless Products.

213.  As a direct and proximate result of Defendant's violations of the NY GBL, Browne and the New York Class members have suffered injury-in-fact and/or actual damages.

214.  As a result of the foregoing willful, knowing, and wrongful conduct of Defendant, Browne and the New York Class members have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual damages or $50, whichever is greater, treble damages up to $1,000, punitive damages to the extent available under the law, reasonable attorneys' fees and costs, an Order enjoining Defendant's deceptive and unfair conduct, and all other just and appropriate relief available under the NY GBL.

215.  Browne, individually and on behalf of the New York Class, seeks monetary damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**COUNT IX**

**Breach of the Implied Warranty of Merchantability**
**(N.Y. U.C.C. Law §2-314)**

216.  Plaintiff Browne incorporates the above allegations in paragraphs 1 through 99 by reference.

217.  Browne brings this claim individually and on behalf of the New York Class against Defendant

218.  Defendant is and was, at all relevant times, a "merchant" with respect to SpoonfulONE Products under N.Y. U.C.C. Law §2-104(1), and a "seller" of such under N.Y. U.C.C. Law §2-103(1)(d).

219.  The SpoonfulONE Products are and were, at all relevant times, "goods" within the meaning of N.Y. U.C.C. Law §2-105(1).

220.  A warranty that the SpoonfulONE Products were in merchantable condition and fit for the ordinary purpose for which the products were used is implied by law pursuant to N.Y. U.C.C. Law §2-314(2)(c).

221.   The SpoonfulONE Products, when sold and at all times thereafter, were not effective in preventing the development of food allergies, and therefore not fit for the ordinary purpose for which the products are used.

222.   Defendant was provided notice of these issues by way of numerous complaints and communications, including the communications discussed in this Complaint, within a reasonable amount of time.

223.   As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Browne and the New York Class members have been damaged in an amount to be proven at trial.

224.   Browne, individually and on behalf of the New York Class members, seeks monetary damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

## CLAIMS ON BEHALF OF THE TEXAS CLASS

### COUNT X

**Violation of the Texas Deceptive Trade Practices – Consumer Protection Act
(Tex. Bus. & Com. Code §17.46)**

225.   Plaintiff Weber incorporates the above allegations in paragraphs 1 through 99 by reference.

226.   Weber brings this claim individually and on behalf of the Texas Class against Defendant.

227.   The SpoonfulONE Products are "goods" as defined by the Texas Deceptive Trade Practices Act ("Texas DTPA"), §17.45(1) because they are tangible chattel purchased for use.

228.   Weber and the Texas Class members are "consumers" as defined by the Texas DTPA, §17.45(4).

229.   Defendant is a "person" as defined under the Texas DTPA, §17.45(3).

230.   Defendant is engaged in "trade" or "commerce" or "consumer transactions" within the meaning of the Texas DTPA, §17.46(a).

231. The Texas DTPA prohibits false, misleading, or deceptive acts or practices in the conduct of any trade or commerce, and any unconscionable action or course of action, §17.46.

232. Specifically, the following are considered violations of the Texas DTPA:

(a) representing that goods or services are of a particular standard, quality, or grade, or that the goods are of a particular style or model, if they are of another, §17.46(7);

(b) advertising goods or services with the intent not to sell them as advertised, §17.46(9); and

(c) the failure to disclose information concerning goods or services known at the time of the transaction and was used to induce the consumer into a transaction whom otherwise would not have entered had the information been disclosed, §17.46(24).

233. Defendant heavily promotes its SpoonfulONE Products as premium products which are effective in preventing the development of food allergies.

234. Weber and the Texas Class members relied on these representations of quality and efficacy in deciding to purchase the SpoonfulONE Products, and in doing so, paid a significant premium for the SpoonfulONE Products.

235. However, the SpoonfulONE Products are fundamentally defective and/or inadequate for their intended purpose because they are not effective in preventing the development of food allergies.

236. Defendant concealed and omitted that the SpoonfulONE Products are not effective in preventing the development of food allergies.

237. Defendant intended that Weber and the Texas Class members would rely upon Defendant's misrepresentations and failures to disclose the true nature of the SpoonfulONE Products.

238. Defendant knew that the SpoonfulONE Products are not effective in preventing the development of food allergies, yet it continued to sell, market, and distribute them to Weber and the Texas Class members, while concealing the true nature of the SpoonfulONE Products' efficacy.

CLASS ACTION COMPLAINT –

239.    Defendant thus violated the provisions of the Texas DTPA by, at a minimum: (a) representing that the SpoonfulONE Products have characteristics, uses, benefits, and qualities which they do not have; (b) representing that the SpoonfulONE Products are of a particular standard, quality, and grade when they are not; (c) advertising the SpoonfulONE Products with the intent not to sell them as advertised; and (d) failing to disclose information concerning the SpoonfulONE Products with the intent to induce consumers to purchase them.

240.    Defendant intentionally and knowingly misrepresented material facts regarding the SpoonfulONE Products with intent to mislead Weber and the Texas Class members.

241.    Defendant knew or should have known that its conduct violated the Texas DTPA.

242.    The efficacy and reliability of the SpoonfulONE Products were material to Weber and the Texas Class members, as they paid specifically for Products that were effective in preventing the development of food allergies.

243.    Defendant had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the Texas DTPA in the course of its business.

244.    As a direct and proximate result of these unfair, deceptive, and unconscionable commercial practices, Weber and the Texas Class members have suffered actual damages in the form of the full retail price paid for the SpoonfulONE Products.

245.    Had Weber and the Texas Class members known that the SpoonfulONE Products were not effective in preventing the development of food allergies, they would not have purchased the SpoonfulONE Products.

246.    As such, Weber and the Texas Class members are entitled to recover actual damages and attorneys' fees pursuant to Texas DTPA §17.50.

247.    On October 27, 2022, Weber sent a letter complying with Tex. Bus. & Com. Code §17.505(a) to Defendant.  *See* Exhibit B.

248.    Because Defendant failed to remedy its unlawful conduct within the requisite time period, Weber and the Texas Class members seek all damages and relief to which they are entitled.

**COUNT XI**

**Breach of Implied Warrant of Merchantability**
**(Tex. Bus. & Com. Code §2.314)**

249.    Plaintiff Weber incorporates the above allegations in paragraphs 1 through 99 by reference.

250.    Weber brings this claim individually and on behalf of the Texas Class against Defendant.

251.    Defendant is and was, at all relevant times, a "merchant" with respect to SpoonfulONE Products under Tex. Bus. & Com. Code §2.104(1), and a "seller" of such under Tex. Bus. & Com. Code §2.103(a)(4).

252.    The SpoonfulONE Products are and were, at all relevant times, "goods" within the meaning of Tex. Bus. & Com. Code §2.105(a).

253.    A warranty that the SpoonfulONE Products were in merchantable condition and fit for the ordinary purpose for which the products were used is implied by law pursuant to Tex. Bus. & Com. Code §2.314.

254.    The SpoonfulONE Products, when sold and at all times thereafter, were not effective in preventing the development of food allergies, and therefore not fit for the ordinary purpose for which the Products are used.

255.    Defendant knowingly and/or recklessly sold a defective, ineffective, or inadequate Product without informing consumers about such.

256.    Defendant possessed superior knowledge of the problems with its SpoonfulONE Products and was provided notice of these issues by way of numerous complaints and communications, including the communications discussed in this Complaint, within a reasonable amount of time.

257.    Weber and the Texas Class members paid specifically for the SpoonfulONE Products' effectiveness in introducing food allergens or preventing the development of food allergies in infants.

258.    Weber and the Texas Class members were the intended beneficiaries of the implied warranties made by Defendant because they were the purchasers of such and the end users of such.

259.    Defendant, who manufactures and markets the SpoonfulONE Products, knew that Weber and the Texas Class members were the end users of the SpoonfulONE Products when Defendant entered into any and all sales contracts and subcontracts for the SpoonfulONE Products, and Defendant's intent was to benefit Weber and the Texas Class members by operation of law pursuant to the "implied covenant of good faith and fair dealing" contained within any and all sales contracts and subcontracts for the SpoonfulONE Products entered into by Defendant.

260.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Weber and the Texas Class members have been damaged in an amount to be proven at trial.

261.    Weber, individually and on behalf the Texas Class members, seeks monetary damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

## CLAIMS ON BEHALF OF THE MINNESOTA CLASS

## COUNT XII

**Violation of the Minnesota Prevention of Consumer Fraud Act
(Unlawful Practices)
(Minn. Stat. §§8.31, *et seq.* and 325F.68, *et seq.*)**

262.    Plaintiff Harris incorporates the above allegations in paragraphs 1 through 99 by reference.

263.    Harris brings this claim individually and on behalf of the Minnesota Class.

264.    This cause of action is brought pursuant to the Minnesota Prevention of Consumer Fraud Act (Unlawful Practices), Minn. Stat. §§8.31, *et seq.* and 325F.68, *et seq* ("MCFA").

265.    The SpoonfulONE Products Defendant sold are "merchandise" as defined in Minn. Stat. §325F.68 and Defendant is a "person" as defined in Minn. Stat. §325F.68.

266.    The MCFA prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with

1   the intent that others rely thereon in connection with the sale of any merchandise, whether or not

2   any person has in fact been misled, deceived, or damaged thereby[.]"  Minn. Stat. §325F.69(1).

3       267.   Defendant engaged in unlawful practices, misrepresentations, and the concealment,

4   suppression, and omission of material facts with respect to the sale and advertisement of

5   merchandise in violation of the MCFA by, *inter alia*, representing that the Products were effective

6   in preventing the development of food allergies.

7       268.   That Harris and the Minnesota Class believed they were purchasing Products

8   effective at preventing the development of food allergies when these representations were not true,

9   were material facts and would be material to a reasonable person.

10      269.   As a direct and proximate result of Defendant's violation of the MCFA, Harris and

11  the Minnesota Class have suffered and continue to suffer ascertainable loss in the form of money

12  in that they paid for SpoonfulONE Products that were not effective in preventing the development

13  of food allergies as represented, as more fully described herein.

14      270.   Harris seeks relief under Minn. Stat. §8.31, including, but not limited to, damages,

15  attorneys' fees, and costs.

16  **COUNT XIII**

17  **Violation of the Minnesota Prevention of Consumer Fraud Act**
18  **(False Statement in Advertising)**
    **(Minn. Stat. §325F.67, *et seq.*)**

19      271.   Plaintiff Harris incorporates the above allegations in paragraphs 1 through 99 by

20  reference.

21      272.   Harris brings this claim individually and on behalf of the Minnesota Class.

22      273.   The SpoonfulONE Products Defendant sold are "merchandise" as defined in Minn.

23  Stat. §325F.68 and Defendant is a "person" as defined in Minn. Stat. §325F.68.

24      274.   Defendant made materially misleading and deceptive statements to consumers

25  about SpoonfulONE Products as being effective in preventing the development of food allergies.

26      275.   This advertising was and continues to be deceptive and misleading because

27  SpoonfulONE Products are not effective in preventing the development of food allergies.

28

CLASS ACTION COMPLAINT –                                                              - 46 -

276.     Defendant had superior knowledge and bargaining power in its transactions with consumers and misrepresented SpoonfulONE Products as being effective in preventing the development of food allergies to induce consumers to purchase SpoonfulONE Products.  These facts are material because reasonable consumers, like Harris, would have not purchased the SpoonfulONE Products at all had they known the products were not effective in preventing the development of food allergies.

277.     Harris and the Minnesota Class seek an Order requiring Defendant to disgorge all ill-gotten gains and provide full restitution of all monies it wrongfully obtained from Harris and the Minnesota Class through its false and deceptive advertising of SpoonfulONE Products.

278.     Harris and the Minnesota Class also seek an award of damages and attorneys' fees for violations of Minn. Stat. §325F.67 pursuant to Minn. Stat. §8.31, subd. 3a.

**COUNT XIV**

**Violation of the Minnesota Uniform Deceptive Trade Practices Act
(Minn. Stat. §325D.43, *et seq.*)**

279.     Plaintiff Harris incorporates the above allegations in paragraphs 1 through 99 by reference.

280.     Harris brings this claim individually and on behalf of the Minnesota Class.

281.     This claim is brought under the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.43, *et seq.* ("MDTPA").

282.     Defendant is a "person" as defined in the MDTPA.

283.     Under the MDTPA, a person engages in a deceptive trade practice when in the course of business, vocation, or occupation, the person:

(a)     "[R]epresents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have";

(b)     "[R]epresents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; and

1      (c)      "[A]dvertises goods or services with intent not to sell them as advertised."  Minn.

2 Stat. §325D.44(5)(7)(9).

3      284.    Defendant violated these provisions of the MDTPA by:

4      (a)      Deceptively representing to Harris and the Minnesota Class that

5 SpoonfulONE Products were effective in preventing the development of food allergies;

6      (b)      Falsely advertising SpoonfulONE Products as effective in preventing the

7 development of food allergies;

8      (c)      Failing to warn or disclose to consumers, including Harris and the

9 Minnesota Class, that SpoonfulONE Products were not effective in preventing the development of

10 food allergies, contrary to Defendant's representations;

11      (d)      Failing to reveal a material fact – that SpoonfulONE Products were not

12 effective in preventing the development of food allergies as represented – the omission of which

13 tends to mislead or deceive consumers, and which fact could not reasonably be known by

14 consumers; and

15      (e)      Making a representation of fact or statement of fact material to the

16 transaction – *i.e.*, that SpoonfulONE Products were effective in preventing the development of

17 food allergies – such that a person reasonably believed they were when they were not.

18      285.    Harris and the Minnesota Class believed they were purchasing products effective

19 in preventing the development of food allergies when they were not.  These were material facts

20 and would be material to a reasonable person.

21      286.    The above unlawful and deceptive acts and practices by Defendant were immoral,

22 unethical, oppressive, and unscrupulous.  These acts caused substantial injury to consumers that

23 the consumers could not reasonably avoid; this substantial injury outweighed any benefits to

24 consumers or to competition.

25      287.    As a direct and proximate result of Defendant's violation of the MDTPA, Harris

26 and the Minnesota Class have suffered and continue to suffer ascertainable loss in the form of

27 money.

28

288.     Pursuant to Minn. Stat. §325D.45, Harris seeks individually and on behalf of all other similarly situated, all available remedies under law, including, but not limited to, actual damages, costs, and attorneys' fees.

## COUNT XV

### Violation of the Alabama Deceptive Trade Practices Act
### (Ala. Code §8-19-1, *et seq.*)

289.     Plaintiff Fowler incorporates the above allegations in paragraphs 1 through 99 by reference.

290.     Fowler brings this claim individually and on behalf of the Alabama Class.

291.     This claim is brought under the Alabama Deceptive Trade Practices Act, Ala. Code §8-19-1, *et seq.* ("ADTPA").

292.     Defendant is a "person" as defined under the ADTPA.

293.     Fowler and all other Alabama Class members are "consumers" as defined by Ala. Code §8-19-3(2).

294.     SpoonfulONE advertised, offered, or sold goods or services in Alabama, and engaged in trade or commerce directly or indirectly affecting the people of Alabama.

295.     Under the ADTPA, the following acts or practices in the conduct of trade or commerce is unlawful:

(a)     "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have;"

(b)     "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; and

(c)     "Advertising goods or services with intent not to sell them as advertised." Ala. Code §§8-19-5(5), (7), (9).

296.     Defendant violated these provisions of the ADTPA by:

(a)     Deceptively representing to Fowler and the Alabama Class that SpoonfulONE Products were effective in preventing the development of food allergies;

1         (b)     Falsely advertising SpoonfulONE Products as effective in preventing the

2 development of food allergies;

3         (c)     Failing to warn or disclose to consumers, including Fowler and the Alabama

4 Class, that SpoonfulONE Products were not effective in preventing the development of food

5 allergies, contrary to Defendant's representations;

6         (d)     Failing to reveal a material fact – that SpoonfulONE Products were not

7 effective in preventing the development of food allergies as represented – the omission of which

8 tends to mislead or deceive consumers, and which fact could not reasonably be known by

9 consumers; and

10         (e)     Making a representation of fact or statement of fact material to the

11 transaction – *i.e.*, that SpoonfulONE Products were effective in preventing the development of

12 food allergies – such that a person reasonably believed they were when they were not.

13       297.     Fowler and the Alabama Class believed they were purchasing products effective in

14 preventing the development of food allergies when they were not.  These were material facts and

15 would be material to a reasonable person.

16       298.     The above unlawful and deceptive acts and practices by Defendant were immoral,

17 unethical, oppressive, and unscrupulous.  These acts caused substantial injury to consumers that

18 the consumers could not reasonably avoid; this substantial injury outweighed any benefits to

19 consumers or to competition.

20       299.     As a direct and proximate result of Defendant's violation of the ADTPA, Plaintiff

21 Fowler and the Alabama Class have suffered and continue to suffer ascertainable loss in the form

22 of money paid for a worthless Product.

23       300.     Pursuant to Ala. Code §8-19-11, Fowler seeks individually and on behalf of all

24 other similarly situated, all available remedies under law, including, but not limited to, actual

25 damages or $100 per violation (whichever is greater) or treble damages, costs, and attorneys' fees.

26       301.     On October 27, 2022, Fowler sent a letter complying with Ala. Code §8-19-10 (e)

27 to Defendant, to the extent required.  *See* Exhibit B.

28

CLASS ACTION COMPLAINT –

302.    A copy of this Complaint should be sent by the Clerk of Court to the Office of the Attorney General for the State of Alabama in compliance with Ala. Code §8-19-10(d).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the respective Class or Classes, respectfully requests that this Court enter an Order:

A.    Certifying this case as a class action on behalf of the Class or Classes defined above, appointing Plaintiffs as representatives of the Class or Classes, and appointing their counsel as Class Counsel;

B.    Awarding damages, including nominal, statutory, and punitive damages where applicable, to Plaintiffs and the Class in an amount to be determined at trial;

C.    Awarding injunctive and other equitable relief, including restitutionary disgorgement and declaratory relief, as is necessary to protect the interests of Plaintiffs and the Class;

D.    Awarding Plaintiffs and the Class their reasonable litigation expenses and attorneys' fees;

E.    Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

F.    Awarding such other and further relief as equity and justice may require.

### JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

DATED:  October 27, 2022                    ROBBINS GELLER RUDMAN
                                                              & DOWD LLP
                                                      AELISH MARIE BAIG


                                                      *s/ Aelish Marie Baig*
                                                      AELISH MARIE BAIG
                                                      TAEVA SHEFLER

CLASS ACTION COMPLAINT –                                                    - 51 -

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
aelishb@rgrdlaw.com
tshefler@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
STUART A. DAVIDSON*
BRADLEY M. BEALL*
ALEXANDER H. COHEN*
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
bbeall@rgrdlaw.com
acohen@rgrdlaw.com

KANTROWITZ, GOLDHAMER &
  GRAIFMAN, P.C.
MELISSA R. EMERT*
GARY S. GRAIFMAN*
135 Chestnut Ridge Road, Suite 200
Montvale, NJ 07645
Telephone:  845/356-2570
845/356-4335 (fax)
memert@kgglaw.com

*Attorneys for Plaintiffs and the Class*

* *Pro hac vice* application forthcoming